UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARC SCARPACI,<br>Plaintiff<br><br>v.<br><br>LOWE'S HOME CENTERS, LLC,<br>Defendant | CIVIL ACTION NO. 15-CV-11525-FDS<br><br>**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

This action arises out of the former employment relationship between Plaintiff Marc Scarpaci (the "Plaintiff") and Defendant Lowe's Home Centers, LLC ("Lowe's" or the "Defendant"). From 2005 until the end of his active employment in November of 2011, the Plaintiff was a manager in the Lowe's organization. As a managerial employee, he was classified as exempt and paid on a salary basis regardless of the number of hours he worked. Although the Plaintiff's Complaint sets forth several separate counts, all arise from one primary claim – that the Plaintiff should not have been classified as exempt and should have been paid overtime for the hours he worked in excess of 40 hours in a given week. Lowe's denies that it misclassified the Plaintiff.

The Plaintiff asserts the following specific claims: (a) Count I – Violation of M.G.L. c. 149, § 150; (b) Count II – Conversion; (c) Count III – Breach of Contract; (d) Count IV – Unjust Enrichment; (e) Count V – *Quantum Meruit*; and (f) Count VI – Constructive Trust. Lowe's moves for summary judgment on all counts of the Complaint on three separate grounds:

- the statutory and tort-based misclassification claims were not timely filed;

- the undisputed facts regarding the Plaintiff's managerial positions clearly establish that he was properly classified as exempt; and
- there are no facts by which the Plaintiff can establish his claims of breach of contract, conversion, unjust enrichment or *quantum meruit.*[1]

This Memorandum, together with the Defendant's Concise Statement of Undisputed Material Facts and supporting Affidavits and Exhibits, is filed in support of that Motion.

## STATEMENT OF UNDISPUTED MATERIAL FACTS[2]

The Plaintiff was actively employed by Lowe's from 2002 until November 15, 2011. From and after 2005, the Plaintiff was employed in a managerial capacity as an Operations Manager and subsequently as an Assistant Store Manager.

As reflected in the Plaintiff's testimony, the Plaintiff's resume, the job descriptions for the two positions and his performance evaluations, the Plaintiff's primary functions in both of those positions were managerial. Those positions placed the Plaintiff as the second in command in the stores in which he worked, reporting directly to the Store Manager. Those stores had anticipated annual sales revenues of greater than $20 million. The Plaintiff had responsibility (with others) for achieving budgeted sales, margins and expenses. He had responsibility for ensuring that standards of customer service, merchandising, operational, safety and security standards were met. He was evaluated on a variety of management related functions including store sales, operational and expense performance, training and development and overall leadership.

The Plaintiff directly and indirectly supervised dozens of employees and directed their work activities. He trained and mentored employees. He conducted performance evaluations of

---

1 The Plaintiff's claim for constructive trust does not state an actionable theory of recovery.

2 This Statement is an abbreviated version of the facts reflected in the Defendant's Concise Statement of Undisputed Facts and is offered for readability purposes.

the employees he supervised. He opened and closed the store on occasion. He had responsibility for removing cash from the store safe at the beginning of the day and counting and placing cash in the store safe at the end of the day.

On an annual basis, he conducted dozens of interviews of potential hires. His scoring of those interviews was a critical aspect of whether an individual was hired. He referred employees for discipline if he observed unsatisfactory conduct.

As Operations Manager and Assistant Store Manager, the Plaintiff received an annual salary that ranged from $69,474 to $78,248. He also received management bonuses ranging from $2,144.33 to $19,038.50 based upon store performance. His compensation far exceeded the employees he supervised, including both non-exempt and other exempt employees.

As Operations Manager and Assistant Store Manager, the Plaintiff regularly worked in excess of 40 hours per week. Because he was classified as exempt, he was paid a straight salary that did not fluctuate based upon the number of hours he worked. The bonuses were not related to the hours worked by the Plaintiff.

The Plaintiff was aware that he was being paid on a salary basis. Despite knowledge that he was being paid on a salary basis, he never once complained to Lowe's during his employment that he was not being paid overtime.

The Plaintiff left active employment and began a personal leave from Lowe's on November 15, 2011. Lowe's formally terminated his employment status one year later on November 14, 2012, after the Plaintiff failed to return to work.

The Plaintiff, through counsel, sent a demand letter to Lowe's two days after his employment status was terminated. That demand made claims for breach of contract, wrongful termination, discrimination, retaliation, tortious interference, misrepresentation, infliction of

emotional distress and violations of various federal and state employment statutes. Nearly one year later, the Plaintiff, through counsel, made complaint regarding alleged violations of the Massachusetts Wage Act to the Attorney General's office on October 21, 2013. On November 8, 2013, the Attorney General's office notified the Plaintiff that it would not pursue the matter and gave the Plaintiff permission to sue.

More than one year later on December 31, 2014, the Plaintiff filed his current Complaint, more than three years after he was paid for his last day of active work.

## ARGUMENT

### A. Summary Judgment Standard

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). In assessing motions for summary judgment, the First Circuit has made clear that "[n]ot every discrepancy in the proof is enough to forestall a properly supported motion for summary judgment; the disagreement must relate to some genuine issue of material fact." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991).

The First Circuit has further recognized that "[g]enuine issues of material fact are not the stuff of an opposing party's dreams. On issues where the non-movant bears the ultimate burden of proof he must present definite, competent evidence to rebut the motion." Id. (emphasis added). This "standard *compels* summary judgment if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001) (emphasis in original). Thus, although the Court

must "interpret the record in the light most hospitable to the non-moving party . . . the non-movant has a corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." Lawton v. State Mut. Life Assurance. Co. of Am., 101 F.3d 218, 222-23 (1st Cir. 1996) (internal citations and quotations omitted). As set forth in detail below, the undisputed facts compel summary judgment on each of the Plaintiff's claims.

**B. The Defendant Is Entitled To Summary Judgment On Count I For Alleged Violations Of The Wage Act, M.G.L. C. 148, § 150.**

1. The Plaintiff's Claim Is Barred By The Statute Of Limitations.

A complaint alleging violations of M.G.L. c. 148 § 150 must be filed "within 3 years after the violation." A violation occurs when a non-exempt employee works more than 40 hours in a given week and the employee is not paid overtime for those hours.

The Plaintiff stopped actively working for Lowe's on November 15, 2011 when he went out on personal leave. He never worked again after that date. He was paid his regular salary amount in his next paycheck in November 2011. The Plaintiff, however, did not file his Complaint until December 31, 2014. It is undisputed that the Plaintiff did not file his Complaint until after the three year statute of limitation expired. Summary judgment should therefore be granted because the Plaintiff's claim was not timely made.[3]

3 The Plaintiff filed a complaint that he had not been paid overtime with the Massachusetts Attorney General's office on October 21, 2013. The Attorney General's office informed him that it was not going to pursue his claim and granted him permission to sue by letter dated November 8, 2013. The Wage Act contains a tolling provision extending the three year statute of limitations "from the date that the employee … files a complaint with the attorney general alleging a violation … until the date that the attorney general issues a letter authorizing a private right of action." G.L. c. 149, §150. Even with that tolling period of 18 days, the Plaintiff's Complaint was still filed beyond the three year statute of limitations.

2. Even If The Plaintiff's Claim Was Timely Filed, Summary Judgment Is Warranted Because The Operations Manager And Assistant Store Manager Positions Were Appropriately Classified By Lowe's As Being Exempt From Overtime Requirements Under The Wage Act.

It is permissible for employers to pay employees on a salary basis without paying additional overtime compensation when the employee works more than 40 hours in a given week, provided the employee's job function falls within certain exemptions listed in the statute. M.G.L. c. 151 § 1A.[4] One such exemption is an employee who is employed as a "bona fide executive." Id. The Massachusetts Minimum Wage Regulation states that this term has the same meaning as it is defined under federal law at Part 541 of Title 29 of the Code of Federal Regulations. 454 CMR § 27.03(3); Goodrow v. Lane Bryant, Inc., 432 Mass. 165, 170 (2000). Under federal regulations, a bona fide executive is defined as an employee who is:

> (1) compensated on a salary basis at a rate of not less than $455 per week; (2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more other employees; and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 CFR § 541.100(a).[5]

As discussed below, the undisputed facts make clear that the managerial positions held by the Plaintiff easily meet the definition of a bona fide executive.[6]

---

4 The Plaintiff has cited to the Wage Act, G.L. c. 148, §150, rather than to the overtime statute in his Complaint.

5 For simplicity, the Defendant's Motion for Summary Judgment focuses on the executive exemption. The statute also provides, however, that employees employed in an "administrative" capacity may be exempt from overtime requirements. An employee employed in an administrative capacity is defined as an employee: (1) compensated on a salary or fee basis at a rate of not less than $455 per week; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 CFR § 541.200. The positions of Operations Manager and Assistant Store Manager may also fall within this exemption. See Cash v. Cycle Craft Co., Inc., 508 F.3d 680 (1st Cir. 2007) (summary judgment for employer under administrative exemption affirmed on suit brought by customer relations manager).

*a. The Plaintiff's Primary Duty Was Management Of The Enterprise Or A Department Or Subdivision Thereof.*

"Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). Factors to consider when determining the primary duty of an employee "include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." Id. Although the amount of time spent performing exempt work may be used as a guide in determining an employee's primary duty, it is not dispositive. See 29 C.F.R. § 700(b). As the First Circuit found in Donovan v. Burger King Corp., 672 F.2d 221, 226 (1st Cir. 1982), "one can still be 'managing' if one is in charge, even while physically doing something else." In Burger King, the First Circuit determined that assistant managers in fast food franchises had management as their primary duty and reversed the district court finding that they were improperly classified as exempt. See Velazquez-Fernandez v. NCE Foods, Inc., 476 F.3d 6, 13-14 (1st Cir. 2007) (summary judgment for employer affirmed); Rooney v. Town of Groton, 577 F.Supp.2d 513 (D.Mass. 2008) (summary judgment granted to employer under both executive

---

6 The Plaintiff was never compensated at a rate less than $455 per week while employed by Lowe's as an Operations Manager and Assistant Store Manager.

and administrative exemptions). Compare Marzuq v. Cadete Enterprises, Inc., 807 F.3d 431, 447 (1st Cir. 2015) (summary judgment for employer vacated).[7]

Here, the evidence is overwhelming that the Plaintiff's primary duty was management of the enterprise while he worked in the position of Operations Manager and Assistant Store Manager. An analysis of the various factors makes this conclusion inescapable.

i. The Plaintiff's Managerial Duties Carried Far Greater Importance Than Did His Non-Exempt Duties.

The importance of the Plaintiff's managerial duties as compared to non-exempt duties is apparent given the breadth of his responsibilities detailed in his deposition testimony, job descriptions, resume and performance reviews. The job descriptions, which the Plaintiff conceded were accurate, make clear that management was his primary duty. See Appendix to the Concise Statement of Undisputed Facts, pp 147. In that regard, the Operations Manager is described as being "(r)esponsible for achieving budgeted sales, margins and managing all expenses within predetermined budget criteria"; as being "2nd in command in the store;" and being "(r)esponsible for all store functions, activities and store employees … ." The Assistant Store Manager is described as being "[r]esponsible for … driving sales and margins in alignment with the financial plan … responsibilities include controlling and monitoring overall store expenses, and ensuring corporate financial and merchandising standards … Additional responsibilities include overseeing overall safety, security, supervision, training, mentoring, and scheduling of assigned personnel …."

---

7 In Marzuq, the plaintiffs, two store managers in a Dunkin' Donuts' franchise, presented conflicting factual support regarding their job, including evidence that their store was "rarely fully staffed" so their spent performing nonexempt work prevented them from prioritizing their supervisory duties. The plaintiff's supervisory role may therefore have been "overwhelmed by his non-managerial tasks." Accordingly, the Court held that the "relative importance" of duties factor cannot be determined on summary judgment and should be left to "a factfinder's judgment on the impact of the plaintiffs' varied undertakings." Id. at 440-441. No such confounding facts regarding the Plaintiff's primary role are present in the case at bar that would warrant this Court's demurrer.

Consistent with the job description, the Plaintiff details a litany of management activities in his resume. Appendix, pp 219 - 220. For example, he states that from 2002 to the present, he was "[r]esponsible for overall supervision, development, training, and mentoring of all assigned personnel as well as store staff in excess of 150 employees." He also lists multiple employees as being "[d]irect [r]eports managed" by him. He further states that he recruited and hired staff in the Haverhill and Saugus stores and lists multiple management activities including: (a) executing the store's physical inventory; (b) ensuring execution of standards; (c) managing freight flow; (d) maintaining safety and security standards; and (e) managing construction of stores.[8]

Moreover, the Plaintiff's performance reviews also demonstrate the primacy of his managerial responsibilities. Appendix, pp 32 - 62. He was evaluated not on completion of individual tasks, but rather, the overall performance of the stores, which had anticipated revenues ranging from $20-35 million, and his leadership of employees within the store.

ii. The Plaintiff Operated With Relative Freedom From Direct Supervision.

In addition to the activities identified in his resume and performance reviews, The Plaintiff also affirmatively testified to a multitude of management functions wherein he operated free from direct supervision. Appendix, pp 137, 139-145. Specifically, he testified that (a) approximately once per week, he was the manager responsible for opening the store; (b) he had the combination to the store safe and had authority over the cash office personnel responsible for removal of cash from the safe at the beginning of the day; (c) he would conduct meetings of all the employees in the store at the store's opening; (d) he had authority to direct employees to work in different departments within the store on any given day; (e) he would create work lists

[8] The Plaintiff verified in his deposition that his resume was accurate.

for employees; (f) he had authority to give employees additional time on tasks; (g) if an employee failed to complete assigned tasks and the circumstances warranted discipline, he would refer the matter to Human Resources; (h) he would recommend to Human Resources whether an employee should receive discipline; (i) he had authority to direct employees; (j) employees understood that they were expected to follow his instructions; (k) when he worked the closing shift in the store, he would "walk the store, make sure all the customers were out, lock the building, make sure the departments were working to get their areas clean;" (l) he would count the cash on hand in the store and put it in the safe; (m) he conducted annual performance reviews for the employees he supervised; (n) he conducted interviews of job applicants for positions in the store he worked in; and (o) Human Resources reviewed his interview ratings and those ratings would be considered in determining whether an individual was hired. In light of the above, the undisputed facts clearly show that the Plaintiff operated with relative freedom from direct supervision.

iii. The Plaintiff's Compensation Far Exceeded Non-Exempt Workers Performing Non-Exempt Duties.

Also, when the Plaintiff's salary is compared to other employees performing non-exempt work, it shows that the Plaintiff's compensation far exceeded the non-exempt workers he supervised. It also shows that his compensation far exceeded the *exempt* workers he supervised. The following is a summary of compensation of the exempt and non-exempt workers he supervised during the relevant timeframes:

| **Date Range** | **Store** | **Positions of Individuals Supervised** | **Form of Compensation** | **Pay Rate Range** | **Plaintiff's Position and Compensation** |
|---|---|---|---|---|---|
| December 31, 2008 to February 19, 2010 | Haverhill | Facility Service Associates | Hourly | $10.56 to $14.07/hr | Ops. Manager – Annual Salary: $74,303.09/yr. to $76,154.29/yr |
| | Haverhill | Price Signage Coordinators | Hourly | $11.75 to $14.42/hr | |
| | Haverhill | Department Managers | Hourly | $16.87 to $18.30/hr | |
| | Haverhill | Zone Managers | Salary | $48,422.40 to $56,014.40/yr | |
| February 20, 2010 to February 4, 2011 | Saugus | Assemblers | Hourly | $12.64 to $14.75/hr | Ops. Manager – Annual Salary: $76,154.29/yr to $78,248.54/yr. |
| | Saugus | Facility Service Associates | Hourly | $12.30 to $14.39/hr | |
| | Saugus | Pricing Signage Coordinators | Hourly | $13.11 to $14.75/yr | |
| | Saugus | Zone Managers | Salary | $44,782.40 to $52,000.00/yr | |
| February 5, 2011 to November 15, 2011 | Saugus | Project Specialist, Interiors | Hourly | $16.92/hr | Assistant Store Manager – Annual Salary: $69,474.00/yr |
| | Saugus | Sales Specialists, Appliances, Cabinets, Flooring | Hourly | $16.92 to $22.55/hr | |
| | Saugus | Dept. Managers | Hourly | $17.;90 to $23.72/hr | |

Appendix, pp 4 - 7.

The non-exempt workers that he directly supervised listed above did not have management of the enterprise as their primary duty. Rather, these individuals performed manual tasks in the form of assembling merchandise as well as other non-exempt tasks such as, assisting customers in their selection of merchandise. The Plaintiff's compensation when compared to

these non-exempt workers, in most instances, is more than double the non-exempt workers rate of compensation.

Likewise, when his compensation is compared to the Department Managers and Zone Managers that he directly supervised, individuals that had management responsibilities within the organization, his compensation far exceeded their compensation, generally, by almost $20,000 annually. Clearly, this prong of the analysis supports the classification of the Operations Manager and Assistant Store Manager positions as exempt.

iv. Although The Plaintiff's Tasks Included Manual Tasks, His Primary Duty Remained Management.

Lastly, although the Plaintiff testified to various manual tasks that he performed, such as cleaning, or operating machinery, such tasks do not nullify his primary duty as being management. See e.g. Donovan, 672 F.2d at 226 (1st Cir. 1982) (holding that assistant managers of a Burger King had management as their primary duty despite performing many of the same tasks as hourly employees); Baldwin v. Trailer Inns, Inc., 266 F.3d 1104, 1117 (9th Cir. 2001) (holding that although RV park managers spent 90 percent of their time on nonexempt tasks, the relative importance of their managerial duties compared to their nonexempt duties supported the exemption); Murray v. Stuckey's, Inc., 939 F.2d 614, 618 (8th Cir. 1991) (holding fact that 65 to 90 percent of time spent on non-managerial duties did not defeat exempt status for restaurant manager); Kahn v. Superior Chicken & Ribs, Inc., 331 F.Supp. 2d 115, 119 (E.D.N.Y. 2004) (deeming fast food restaurant manager an exempt executive where he was highest level employee on night shift and was responsible for supervising employees, closing the store using his own key, taking inventory, and handling the cash drop in the safe). Given the factors discussed above, the Plaintiff's primary duty was clearly management of the enterprise.

### b. *The Plaintiff Customarily And Regularly Directed The Work Of Two Or More Other Employees.*

There can be no dispute that the Plaintiff regularly directed the work of two or more other employees. As set forth above, the Plaintiff's resume states that he was responsible for the supervision of all assigned personnel including all store employees in excess of 150 employees. The job descriptions for his two positions likewise make clear that he was responsible for the employees that reported to him. These included Assemblers, Sales Specialists, Service Associates, Department Managers, and Zone Managers. Moreover, his performance evaluations show that his performance was consistently evaluated on his leadership, which included training of subordinate employees. Accordingly, there can be no doubt that he regularly directed the work of two or more employees.

### c. *The Plaintiff's Recommendations As To Hiring Were Given Particular Weight.*

The Plaintiff's responsibilities and activities meet the final prong of the executive exemption which is, "authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 CFR § 541.100(a). Factors to consider in determining whether suggestions or recommendations are given "particular weight" "include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. 29 CFR § 541.105. "An employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more

importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." Id.

In this instance, the Plaintiff's roles as Operations Manager and Assistant Store Manager clearly meet this prong of the analysis. As stated in the Plaintiff's resume, he recruited and hired staff for the Haverhill store. His deposition testimony fleshes out that role in both the Haverhill and Saugus stores. He regularly conducted interviews of applicants for the purposes of hiring on a year round basis - approximately thirty three interviews each year. When he conducted interviews, he would rate the applicant and provide his ratings to Human Resources (HR), who would review his ratings for the purposes of determining whether or not the person should be hired. Although the Plaintiff did not ultimately make the decision to hire, his ratings were "given particular weight" in that determination. As such, the Plaintiff's performance of his positions clearly meets this final prong of the analysis.

Based upon these undisputed facts, the Plaintiff's job functions clearly meet the requirements of the *bona fide* executive exemption under the statute. Lowe's is therefore entitled to summary judgment on Count I of the Plaintiff's Complaint.

**C. The Defendant Is Entitled To Summary Judgment On Count II For Conversion Of Overtime Wages.**

1. The Plaintiff's Claim Is Barred By The Statute Of Limitations.

In Count II of his Complaint, the Plaintiff asserts a claim for conversion. As grounds for that claim, the Plaintiff asserts that he was not compensated for the overtime hours that he worked. The unpaid wages are presumably the personal property that Lowe's has converted.

Claims of conversion must be filed within three years of the cause of action accruing. See M.G.L. c. 260 § 2A; Stark v. Advanced Magnetics, Inc., 50 Mass.App.Ct. 226, 229 (2000). As set forth above, the Plaintiff last worked for Lowe's on November 15, 2011. Accordingly, his

claim for overtime for working more than 40 hours in a week accrued in November 2011, more than three years before the filing of Complaint on December 31, 2014. The claim of conversion is therefore barred by the statute of limitations.

2. Even If The Plaintiff's Claim Was Timely Filed, Summary Judgment Is Warranted Because There Are No Facts Supporting The Elements Of A Claim Of Conversion.

Even if the Plaintiff's claim is not time barred, his claim for conversion is without factual basis. The tort of conversion requires an intentional or wrongful exercise of dominion or control over personal property of another by one with no right to immediate possession. Kelley v. LaForce, 288 F.3d 1, 11-12 (1st Cir. 2002). See Third Nat. Bank of Hampden Cty. v. Cont'l Ins. Co., 388 Mass. 240, 245 (1983) (the unpaid proceeds of an insurance policy covering destroyed property while still in the hands of the insurance company do not constitute the requisite personal property of another). Conversion is an intentional exercise of dominion or control *over a chattel.* Restatement (Second) of Torts § 222A (1965) (emphasis added).

In this instance, although the Plaintiff does not specify in his complaint, his conversion claim is presumably premised on the idea that the funds to be used to pay him overtime are his personal property. There is no authority, however, for such a proposition that funds that could be used to a pay a debt, by virtue of the debt, are the personal property of the creditor thereby giving rise to a claim of conversion.

Finally, as set forth at length above, there is no basis for the Plaintiff's factual claim that Lowe's owes him any overtime. Summary judgment on the Plaintiff's claim of conversion in Count II is warranted.

**D. The Defendant Is Entitled To Summary Judgment On Count III For Breach Of Contract.**

No doubt in an effort to avoid the overwhelming evidence that he was properly classified as exempt, the Plaintiff asserts a claim for breach of contract in Count III of his Complaint. In this vaguely worded Count, the Plaintiff asserts only that "Lowe's agreed to pay [the Plaintiff] on an hourly basis for the valuable services he provided Lowe's." Appendix, pp 85. The undisputed facts point to the absence of the formation of such a contract.

Specifically, the job descriptions applicable to the Plaintiff while he held the exempt positions, clearly state that those positions are salaried positions. Further, the Plaintiff's pay stubs reflect payment of a consistent bi-weekly salary regardless of any variation in the hours worked by the Plaintiff.[9]

In order to withstand summary judgment on this Count, the Plaintiff must provide evidence that Lowe's agreed to pay him hourly including overtime. Here, the Plaintiff freely admits that he cannot point to a single communication wherein Lowe's made such an offer or agreement while he was employed in the positions of Operations Manager and Assistant Store Manager. Given that the Plaintiff has the burden of proof of this highly unusual contract and he disclaims the existence of any evidence that would support such an agreement, summary judgment on Count III is warranted.

**E. The Defendant Is Entitled To Summary Judgment On Count IV For Unjust Enrichment.**

In Count IV of his Complaint, the Plaintiff asserts a claim of unjust enrichment. As grounds for that claim, the Plaintiff again relies upon his claim for overtime. To buttress that

---

[9] Consistent with the unlikelihood that any employer would enter into such a contract with an employee it classified and paid as exempt, the Plaintiff never once complained during his employment that his pay check was in error because it failed to include any overtime pay.

claim, he adds an allegation that Lowe's has been unjustly enriched by not paying the Plaintiff for services he provided to Lowe's. Appendix, pp 87.

Unjust enrichment is defined as "retention of money or property of another against the fundamental principles of justice or equity and good conscience." An equitable remedy for unjust enrichment, however, is not available to a party with an adequate remedy at law. Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005). Massachusetts v. Mylan Labs., 357 F. Supp. 2d 314, 324 (D. Mass. 2005). See Spears v. Miller, 2006 Mass. App. Div. 151 (2006) (claim for unjust enrichment dismissed where adequate remedy at law existed for plaintiff's claims for unpaid overtime). Further, even if the claims at law are subject to dismissal, a cause of action for unjust enrichment is unavailable. United States v. Buckley, No. civ. A. 0011632RWZ, 2005 WL 164287, at *1 (D. Mass. Jan. 25, 2005) (dismissal of fraud claim as untimely does not negate principle that remedy at law prevents unjust enrichment claim).

The Plaintiff has an adequate remedy at law for his claims of unpaid overtime even if those claims may now be dismissed. No claim for unjust enrichment therefore lies. The Defendant is therefore entitled to summary judgment on Count IV.

### F. The Defendant Is Entitled To Summary Judgment On Count V For *Quantum Meruit.*

In Count V of his Complaint, the Plaintiff asserts a claim for *quantum meruit*. As grounds for that claim, the Plaintiff again relies upon his claim for overtime, recasting it as his having worked additional hours for which he was not compensated. Appendix, pp 88.

*Quantum meruit* is an implied contract theory of recovery. In order to recover in *quantum meruit*, the Plaintiff must establish: (1) the plaintiff conferred a reasonable benefit upon the defendant; (2) the defendant accepted the services with the reasonable expectation of compensating the plaintiff; and (3) the plaintiff provided the services with the reasonable

expectation of receiving compensation. Depianti v. Jan-Pro Franchising International, Inc., 39 F.Supp.3d 112, 141 (D.Mass. 2014).

In this instance, the Plaintiff's claim fails because he cannot establish the second element of *quantum meruit*. The time frame during which the Plaintiff may claim compensation was due, is December 31, 2008, through November 15, 2011. During that approximate three year period, it is undisputed that Lowe's compensated the Plaintiff on a salary basis at annual rates that ranged from $69,474 through $78,248 per annum. Also during that three year period, Lowe's paid the Plaintiff four separate management bonuses, which totaled $45,649.80. Lowe's treatment of the Plaintiff as a salaried exempt employee was appropriate under the Wage and Hour laws and consistent with how it structured its stores and management of its stores. As such, the Plaintiff has failed to establish that Lowe's reasonably expected to pay the Plaintiff additional compensation for hours that he worked over 40 hours in a given workweek, over and above the compensation that the Defendant in fact paid him. Accordingly, Lowe's is entitled to summary judgment on Count V.

**G. The Defendant Is Entitled To Summary Judgment On Count VI Seeking The Imposition Of A Constructive Trust.**

In Count VI of his Complaint, the Plaintiff asserts that "all funds owed should be held in constructive trust" for his benefits. A request for a constructive trust, standing alone, is not an independent cause of action. Feinman v. Lombardo, 214 B.R. 260, 266 (D. Mass. 1997). It is an equitable remedy that the Court imposes to prevent unjust enrichment. Id. Accordingly, where the Plaintiff's underlying causes of action fail, as set forth above, so too does a request for the constructive trust remedy. As such, Lowe's is entitled to summary judgment on Count VI.

## CONCLUSION

For the foregoing reasons, the Defendant requests that its Motion for Summary Judgment on all counts of the Plaintiff's Complaint be granted.

Respectfully submitted,

**LOWE'S HOME CENTERS, LLC,**

By its attorneys,

/s/ Richard C. Van Nostrand

Richard C. Van Nostrand, BBO #507900
Michael P. Murphy, BBO #654053
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581-3926
Phone: (508) 860-1453
Fax: (508) 207-9347
Email: rvannostrand@mirickoconnell.com
mmurphy@mirickoconnell.com

Dated: May 16, 2016

CERTIFICATE OF SERVICE

I, Richard C. Van Nostrand, hereby certify that this document(s), filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants by U.S. first-class mail.

/s/ Richard C. Van Nostrand
Richard C. Van Nostrand, Esq.

Dated: May 16, 2016