UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
MARC SCARPACI, )
)
      Plaintiff, )
) Civil No.
      v. ) 15-11525-FDS
)
LOWE'S HOME CENTER, LLC, )
)
      Defendant. )
_____)

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**SAYLOR, J.**

This is a claim for overtime wages under the Massachusetts Wage Act brought by plaintiff Marc Scarpaci against his former employer, Lowe's Home Center, LLC. Scarpaci contends that he is entitled to compensation under the statute for hours worked in excess of forty hours per week. The complaint also brings claims for recovery under theories of conversion, breach of contract, unjust enrichment, and *quantum meruit*.

Lowe's has moved for summary judgment as to all claims. For the reasons described below, the motion will be granted.

**I.    Factual Background**

The following facts are either undisputed or presented in the light most favorable to the plaintiff.[1]

Defendant Lowe's Home Center, LLC is a home improvement retailer that operates several store locations in Massachusetts. Plaintiff Marc Scarpaci first began working at Lowe's

---

[1] The Court notes that Scarpaci does not appear to dispute many of the facts contained in Lowe's statement of material facts.

in June 2002, when he was hired as a "receiver/stocker." (Def. App'x. 10). Eventually, Scarpaci was promoted to the position of operations manager of the Lowe's store in Haverhill, Massachusetts, which he held until February 2010. (*Id.*).

Scarpaci was then transferred to a Lowe's store in Saugas, Massachusetts, where he continued to serve as operations manager. In February 2011, his position as operations manager was eliminated, and he assumed the newly-created position of assistant store manager. (*Id.* at 125).

As a receiver/stocker, Scarpaci was paid a rate of $12 per hour. (*Id.* at 10-11).[2] Once he was promoted to operations manager and then assistant store manager, Lowe's classified him as an "exempt" employee. (Howland Aff. ¶ 18). Lowe's payroll records show that after his promotion to operations manager, he was paid a consistent, fixed amount. (Def. App'x. 64-72). Those records also credit Scarpaci with 40 hours worked every week, although he contends that he frequently worked more than amount. (*Id.*). He did not receive any overtime pay while he was employed as a manager. (Howland Aff. ¶ 20).

Lowe's contends that Scarpaci was paid an annual salary of $50,000 when he was first promoted to operations manager; a salary between $74,303 and $78,248 from December 2008 until February 2011; and a salary of $69,474 from February 2011 until November 15, 2011. (*Id.* ¶ 7; Def. App'x. 10-11).[3] He also received management bonuses; those bonuses were paid based upon the overall performance of the store (as compared to the store's sales goals) and were not dependent on the number of hours he worked. (*Id.* at 7; Howland Aff. ¶¶ 51-53).

---

[2] Scarpaci disputes whether his pay as a receiver/stocker was "on an hourly basis," but agrees that he was paid at an hourly rate of $12, a daily rate of $96, a monthly rate of $2,080, and an annual rate of $24,960. (PSMF ¶ 13).

[3] Scarpaci, however, contends that his pay during those times is properly characterized as "an annual rate equivalent to" the amount that Lowe's refers to as his "salary." (PSMF ¶¶ 18-20).

Throughout his employment at Lowe's, Scarpaci's paycheck was directly deposited into his bank account. (Def. App'x. 131). He downloaded his pay stubs from "Lowe's Net." (Scarpaci Dep. 62-63). Each pay stub that he received as an operations manager or assistant store manager reflected "80 hours" for each bi-weekly pay period, even though he regularly worked more than that amount. (Def. App'x. 123).

In November 2011, Lowe's informed Scarpaci that he would be transferred to a different location. (Howland Aff. ¶ 10). On Tuesday, November 15, 2011, he went on unpaid personal leave. His final paycheck was issued on that Friday, November 18, 2011. He did not perform any work for the company after November 15. (*Id.* ¶¶ 11-13). Lowe's formally terminated his employment on November 14, 2012, one year after his personal leave began. (*Id.* ¶ 14).

On October 21, 2013, Scarpaci filed a claim against Lowe's with the Massachusetts Attorney General for alleged violations of the Massachusetts Wage Act. (Compl. Exs. C, D). On November 8, 2013, the Attorney General's Office gave notice that it declined to pursue the claim and authorized him to bring his own action. (Compl. Ex. E). Scarpaci filed the complaint in this action on December 31, 2014.

## II. Procedural History

The complaint alleges claims for (1) violation of the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 150; (2) conversion; (3) breach of contract; (4) unjust enrichment; (5) *quantum meruit*; and (6) constructive trust. Lowe's has moved for summary judgment on all counts.

## III. Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816,

3

822 (1st Cir. 1991) (internal quotation marks omitted). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

## IV. <u>Massachusetts Wage Act (Count One)</u>

Count One asserts a claim for unpaid overtime wages in violation of the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 150.[4] Lowe's contends that the claim is barred by the statute of limitations, and that, in any event, the undisputed record evidence indicates that Scarpaci was properly classified as "exempt" and therefore not subject to the statute's overtime requirements.

---

[4] Mass. Gen. Laws ch. 149, § 150 provides a private right of action for violations of Section 148 of that chapter, which is directed at the timing of when an employee must be paid. An employee may choose to bring a claim for unpaid overtime under the Wage Act, Mass. Gen. Laws ch. 149, §§ 148, 150, rather than Mass. Gen. Laws ch. § 151, § 1A, which specifically grants employees the right to receive one and one-half their regular pay rate for hours worked in excess of 40 hours per week. *Crocker v. Townsend Oil Co.*, 464 Mass. 1, 7 (2012). "However, in such instance, recovery is limited to uncompensated time worked at the regular rate." *Id.*

Violations of Mass. Gen. Laws ch. 149, § 148 are subject to a three-year limitations period. *See* Mass. Gen. Laws ch. 149, § 150. The statute allows for tolling of the limitations period "from the date that the employee or a similarly situated employee files a complaint with the attorney general alleging a violation . . . until the date that the attorney general issues a letter authorizing a private right of action . . . ." *Id.*

The parties agree that November 15, 2011, was the last time Scarpaci performed any actual work for Lowe's. The last date on which Lowe's could have failed to pay Scarpaci for overtime worked was when his last paycheck was issued three days later. Accordingly, his claim for non-payment of overtime accrued no later than November 18, 2011. At that point, the three-year limitations period began to run.

On October 21, 2013, Scarpaci filed a claim with the Attorney General's office. That filing tolled the limitations period through November 8, 2013, when the Attorney General's office declined to pursue the claim, for a total of 18 days. Including that period of tolling, the limitations period thus expired on December 6, 2014. This action was not filed until December 31, 2014, 25 days after the limitations period expired.

Scarpaci contends that he is nonetheless entitled to equitable tolling of his claim because he was afraid of "retaliation" from Lowe's upper management.[5] The doctrine of equitable tolling allows a plaintiff to assert an otherwise time-barred claim in a limited set of circumstances and operates to prevent "results contrary to good conscience and fair dealing." *McLearn v. Hill*, 276

---

[5] Although Scarpaci seeks "equitable tolling" in relation to his retaliation argument, it is possible that the claim might be characterized instead as a claim of equitable estoppel. "The two doctrines are closely related, but distinct." *Ramirez-Carlo v. United States*, 496 F.3d 41, 48 (1st Cir. 2007). Both doctrines are "exceptions to the general rule [regarding statutes of limitations] and prohibit defendants from escaping liability through their misleading conduct that prevents the plaintiff from obtaining essential information (equitable tolling), or that leads the plaintiff to believe that legal action within the limitations period is not necessary (equitable estoppel)." *Thompson v. Mahoney*, 68 Mass. App. Ct. 1120 (2007) (internal citations omitted). Here, any difference between the two is immaterial, as Scarpaci is not entitled to relief under either theory.

Mass. 519, 524 (1931). The plaintiff has the burden of proving that he is entitled to equitable tolling of a statute of limitations. *See id.*; *cf. Pagliarini v. Iannaco*, 440 Mass. 1032 (2003) (plaintiff has the burden of proving that a defendant should be estopped from asserting a statute of limitations defense).

At his deposition, Scarpaci testified that he believed for three reasons that he would be subject to retaliation if he complained about not receiving overtime pay. First, he testified that he was once instructed to "hammer" an assistant store manager for "dating another person at the store." (Scarpaci Dep. 76-77). Second, he testified that a Lowe's employee was once transferred to another store for "speaking out" against another employee. (*Id.* at 79-80).[6] Third, he described an incident in which a driver who was on a "final notice" was terminated after swearing at a store manager. (*Id.* at 80-82).

Taking Scarpaci's description of those events at face value, the first and third examples detail instances of employee discipline, not retaliation. Scarpaci's apparent disagreement as to whether that discipline was warranted is not evidence that the disciplined employees were "retaliated" against by Lowe's management for exercising their rights. The second incident—in which an employee was transferred for "speaking out"—is simply too vague and unspecific to meet the high burden necessary for equitable tolling. There is simply no evidence as to the content of the employee's statements, and therefore no evidence that Lowe's actually retaliated against that employee. Indeed, none of the three incidents describe an instance of Lowe's management retaliating against an employee for raising a complaint about the company, much less speaking out about unpaid wages. Thus, even taking the evidence in the light most favorable to Scarpaci, he has not provided sufficient evidence for the Court to conclude that his fear of

---

[6] Scarpaci could not recall what the transferred employee was "speaking out" against. (Scarpaci Dep. 79-80).

retaliation was reasonable or that equitable tolling is otherwise appropriate.

Furthermore, and in any event, an equitable extension of the statute of limitations "will not apply if a reasonable time remains within the limitations period for filing the action once the circumstances inducing the delay have ceased." *See Pagliarini*, 440 Mass. at 1032. Once Scarpaci's employment was terminated as a formal matter on November 14, 2012, he no longer was subject to any "retaliation" that he might have feared while still an employee. At that point, there were more than two years remaining in the limitations period; that is certainly a reasonable amount of time in which the claims presented here could have been filed. Accordingly, the Court finds that Scarpaci is not entitled to equitable tolling of the statute of limitations due to a fear of retaliation.

Scarpaci also contends that his claim should be tolled under the doctrine of fraudulent concealment, based on Lowe's apparent loss of his personnel file. Mass. Gen. Laws ch. 260, § 12 tolls the running of any limitations period if a party "fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it." Here, there is no dispute that Scarpaci was aware of both the number of hours he worked each week and the amount he was paid each pay period by Lowe's. Scarpaci therefore possessed all of the information he needed to have knowledge of his claim; as a result, equitable tolling on the basis of "fraudulent concealment" is clearly inappropriate.

In the absence of equitable tolling, the three-year limitations period expired no later than December 6, 2014. He did not file his complaint until December 31, 2014. Accordingly, his claim under the Wage Act is untimely, and defendant's motion for summary judgment as to Count One will be granted.

**V.      Conversion (Count Two)**

Count Two asserts a claim for conversion under Massachusetts common law. Counsel for Scarpaci conceded at oral argument that the claim should be dismissed. Defendant's motion for summary judgment as to Count Two will therefore be granted.

## VI. Breach of Contract (Count Three)

Count Three asserts a claim for breach of contract. To prove a breach of contract under Massachusetts law, a plaintiff must show "that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage." *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 316 (D. Mass. 1997); *accord Michelson v. Digital Fin. Servs.*, 167 F.3d 715, 720 (1st Cir. 1999).

To succeed on a claim for breach of contract, a plaintiff "has the burden of proving the failure of the defaulting party to conform to one or more of the contract's material terms." *See Miller v. NormaTec*, 2012 WL 3686861, at *3 (D. Mass. Aug. 27, 2012). Implicit in that requirement is that a plaintiff must "offer evidence sufficient to show the existence *and* terms of a contract, and breach of a promise contained therein." *Fatahi v. Fleet Boston Fin. Corp.*, 2002 WL 775243, at *2 (Mass. Super. Feb. 15, 2002) (emphasis added).

The undisputed facts establish that an informal employment contract existed between Scarpaci and Lowe's. "The defendant[ ], by hiring and employing the plaintiff[ ], 'entered into [an] employment contract with [him].' . . . Indeed, 'an informal contract of employment may arise by the simple act of handing a job applicant a shovel and providing a workplace.'" *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 57 (1st Cir. 2013) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 74 (1984)).

Scarpaci contends that Lowe's breached the contract by failing to pay him time-and-a-half for overtime hours. The record, however, is absolutely devoid of any evidence that the

8

terms of that contract included, as Scarpaci contends, a provision that he would be paid time-and-a-half for any work in excess of 40 hours per week. Although he testified at his deposition that he believed he should have been receiving overtime pay and that he was never told that the manager positions were salaried positions, he also admitted that he could not recall any discussion with Lowe's management, or any other conduct by Lowe's, that could establish that Lowe's agreed to such a term. (Scarpaci Dep. 33-34; Def. App'x. 122). In short, the record lacks any evidence from which a reasonable jury could conclude that Lowe's agreed to pay Scarpaci time-and-a-half for overtime. Accordingly, defendant's motion for summary judgment as to Count Three will be granted.

### VII. Unjust Enrichment (Count Four)

Count Four asserts a claim for unjust enrichment. Unjust enrichment is defined as the "retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005) (quoting *Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass. 1982)). To succeed on a claim for unjust enrichment, a plaintiff must show (1) a benefit conferred upon defendant by plaintiff, (2) an appreciation or knowledge by defendant of the benefit, and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value. *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009).

An equitable claim for unjust enrichment is not available when the claiming party has an adequate remedy at law. *See Santagate*, 64 Mass. App. Ct. at 329. Here, Scarpaci's claim for breach of contract is a legal remedy, and therefore he may not also bring a claim for unjust

9

enrichment. *See Spears v. Miller*, 2006 Mass. App. Div. 151, at *3 (2006).[7] Accordingly, defendant's motion for summary judgment as to Count Four will be granted.

## VIII. *Quantum Meruit* (Count Five)

Count Five asserts a claim for *quantum meruit*.[8] "Recovery in *quantum meruit* presupposes that no valid contract covers the subject matter of a dispute." *Boswell v. Zephyr Lines, Inc.*, 414 Mass. 241, 250 (1993). "Where such a contract exists, the law need not create a *quantum meruit* right to receive compensation for services rendered." *Id.* Here, it is clear that whatever its terms, a valid employment contract existed between Scarpaci and Lowe's. Accordingly, defendant's motion for summary judgment as to Count Five will be granted.

## IX. Constructive Trust (Count Six)

Count Six purports to assert a claim for "constructive trust." The parties appear to agree that the viability of Count Six depends on the continued viability of the other five causes of action asserted. Because the Court will grant Lowe's motion for summary judgment on Counts One through Five, the motion for summary judgment as to Count Six will also be granted.

---

[7] The term "adequate remedy at law" refers to the existence of legal (as opposed to equitable) theory by which the plaintiff may seek recovery; it does not, however, require the existence of a legal theory under which the plaintiff is ultimately successful on obtaining a recovery. *Cf. Spears*, 2006 Mass. App. Div. at * 3 (legal remedy still considered adequate even if barred by statute of limitations). In other words, the Court's ruling that Scarpaci has failed to identify sufficient record evidence to support his claim for breach of contract does not make that claim "inadequate."

[8] Although Scarpaci asserts separate claims for unjust enrichment and *quantum meruit*, "under Massachusetts law, a claim for unjust enrichment and *quantum meruit* are treated similarly and have the same elements." *SAR Grp. Ltd. v. E.A. Dion, Inc.*, 79 Mass. App. Ct. 1123 (2011) (citing *Salamon v. Terra*, 394 Mass. 857, 859 (1985); *Mike Glynn & Co. v. Hy-Brasil Restaurants, Inc.*, 75 Mass. App. Ct. 322, 326 (2009)).

## X. Conclusion

For the reasons set forth above, defendant's motion for summary judgment is GRANTED.

**So Ordered.**

                                                  /s/ F. Dennis Saylor
                                                  F. Dennis Saylor IV

Dated: July 22, 2016                         United States District Judge